IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LIGHTNING MOTORCYCLES, INC.,

Plaintiff,

vs.

No. CIV 00 1826 DJS/RLP

JOHN R. PARROTT, individually, and
VICKIE R. PARKER,
also known as VICKIE R. PARROTT, individually,
and STRYKER ENTERPRISES, individually,

Defendants.

02 JUL -5 PM 4:28

## DEFENDANTS' PROPOSED
## FINDINGS OF FACT AND CONCLUSIONS OF LAW

COME NOW Defendants JOHN R. PARROTT, individually, and VICKIE R. PARKER,

also known as VICKIE R. PARROTT, individually, and STRYKER ENTERPRISES and for their

requested findings of fact and conclusions of law submit the following:

### FINDINGS OF FACT

1.    On or about December 1996 Defendants John R. Parrott and Vickie Parker a/k/a/ Vickie

      Parrott entered into a "Business Agreement" with the Plaintiff Lightning Motorcycles.

      Defendant's Exhibit D

2.    Neither Plaintiff nor Defendants have any legal training or education.

3.    The final Business Agreement was arrived at through mutual discussion and negotiation of

      its terms.

4. The Business Agreement provided that Defendants were "committed" to buying 12 trykes in 1997 and 24 trykes in subsequent calendar years. Defendant's Exhibit D

5. The Business Agreement provided that if the twelve tryke quota was not met, Lightning Motorcycles was no longer subject to the agreement and could sell trykes independently. Defendant's Exhibit D

6. The ability of Plaintiff to sell trykes independently is the only reference to the recourse available to Plaintiff should Defendants not purchase the number of trykes they were committed to buying. Defendant's Exhibit D and proposed testimony of John Parrott.

7. The Business Agreement provided that the suggested retail price would be agreed upon by Stryker Enterprises and Lightning Motorcycles and would be determined by a combination of factors. Defendant's Exhibit D

8. The suggested retail price was set by Lightning Motorcycles without agreement by Defendants. Proposed testimony of John Parrott.

9. In furtherance of the Business Agreement, John Parrott and John Harrison entered into a Purchase Contract on November 25, 1996 under which Parrott was to purchase five trykes from Lightning Motorcycles. Proposed Testimony of John Parrott.

10. The Purchase Contract contained a tentative delivery date of March 30, 1997. Proposed Testimony of John Parrott.

11. On December 12, 1996, Parrott, Parker and Harrison agreed to Additions to the Purchase Agreement. The Additions indicated that the sale would be of four rolling chassis frame kits to be completed by May 1, 1997. Defendants' Exhibit E.

12. The rolling chassis frame kits were not completed until approximately September of 1997.

13. The Business Agreement did not provide that Defendants must purchase the trykes exclusively from Plaintiff. Proposed testimony of John E. Harrison and John Parrott.

14. The Business Agreement made no mention of the actual or good faith requirements of Defendants. Defendants' Exhibit D.

15. The Business Agreement established clear and distinct ways by which each company would obtain its profits. Plaintiff's profit would be based on the wholesale price of the trykes sold to Defendants, while Defendants' profits would be derived from sale of the trykes to the ultimate consumer. Plaintiff's profits were therefore fixed to some extent. In contrast, Defendants' profits were directly a function of what the market would bear and had no relationship to the profits earned by Plaintiff. Defendants' Exhibit D, Proposed testimony of John Parrott..

16. There is no indication in the Business Agreement that Plaintiff and Defendants agreed to an equal split, constant percentage or fixed proportion of profits. Defendants' Exhibit D.

17. The Business Agreement did not provide that the parties would share any potential losses. Defendants' Exhibit D.

18. Plaintiff received an immediate profit from Defendants for each sale to Defendants. Proposed Testimony of John Parrott and John E. Harrison.

19. Defendants bore the risk of being unable to retail the trykes or selling them for minimal profits and thus incurring losses which would not be shared by Plaintiff. Proposed testimony of John E. Harrison.

20. Lighting Motorcycles and Stryker Enterprises had separate and distinct purposes. Plaintiff had full responsibility for the production of the product and, with only very limited

exceptions, Defendants had full responsibility for the sale of the product. Defendants'
Exhibit D. Proposed testimony of John Parrott.

21.    Under the Business Agreement, the two companies were separate and independent.
Defendants' Exhibit D, Proposed testimony of John Parrott.

22.    The Business Agreement demonstrates that Defendants had no control over the design and
production process. Defendants' Exhibit D, Proposed testimony of John Parrott.

23.    The Business Agreement demonstrates that Plaintiff had no control over the retail process.
Defendants' Exhibit D, Proposed testimony of John Parrott.

24.    As a result of Plaintiff's failure to complete the motorcycles by the already extended date
of May 1, 1997 and of the clear unlikelihood that Plaintiff would be able to produce eight
more trykes (as required by the Business Agreement) in the remaining three months of
1997, Defendants did not order additional trykes in 1997.   Proposed testimony of John
Parrott.

25.    The Business Agreement did not specify a time period for which the Agreement would
endure. Defendants' Exhibit D.

26.    The Business Agreement was ended in December of 1997 or January of 1998 in a
telephone conversation between John Parrott and John Harrison, as a mutual decision.
Proposed testimony of John Parrot and John E. Harrison.

27.    In the alternative, the Business Agreement was ended by John Harrison in a telephone
conversation with John Parrott in December of 1997 or January of 1998. Proposed
testimony of John Parrot and John E. Harrison.

4

28. In the alternative, the Business Agreement was ended by John Parrott in a telephone conversation with John Harrison in December of 1997 or January of 1998. Proposed testimony of John Parrot.

29. In December of 1997 or January of 1998 Plaintiff had not manufactured any trykes, other than those originally contracted for by Defendants. Proposed testimony of John Parrot and John E. Harrison.

30. Any losses sustained by the Plaintiff due to the early end of the agreement were caused by the Plaintiff's breach of the Business Agreement. Proposed testimony of John Parrot.

31. Plaintiff transferred all of its assets to Margie Stuchly (who later formed Lighting Enterprises V-8's Inc.) in November of 2000 in satisfaction of outstanding debts. Proposed testimony of John E. Harrison.

32. Plaintiff transferred its intellectual property, including the "Lighting Motorcycles" trademark to Margie Stuchly (who later formed Lighting Enterprises V-8's Inc.) in November of 2000 in satisfaction of outstanding debts. Proposed testimony of John E. Harrison.

33. Upon the transfer of all of the Plaintiff's assets to Margie Stuchly, Plaintiff did not reserve any rights or retain any interest in what formerly belonged to Lightning Motorcycles. Proposed testimony of John E. Harrison.

34. The matter before this court was filed on December 29, 2000. Proposed testimony of John E. Harrison.

35. On or about June 20, 1999 Defendants and Plaintiff entered into an agreement for the purchase and sale of five trykes. Proposed testimony of John Parrott and john E. Harrison.

36. Defendants paid approximately $76,000 for the five trykes that were the subject of the 1999 Agreement. Proposed testimony of John Parrott and John E. Harrison.

37. Plaintiff used the money provided by Defendants to manufacture trykes which it later sold to others. Proposed testimony of John E. Harrison.

38. Plaintiff neither delivered the five trykes nor returned the money provided for purchase of the trykes to Defendants. Proposed testimony of John Parrott and John E. Harrison.

## CONCLUSIONS OF LAW

1. Plaintiff breached the Business Agreement by unilaterally setting a suggested retail price for the trykes.

2. Plaintiff breached the Purchase Contract by not completing the four rolling chassis by the required delivery date.

3. Plaintiff's breach of the Purchase Contract constitutes a breach of the Business Agreement.

4. A requirements contract is one in which the quantity to be sold is measured by the requirements of the buyer.

5. An essential element of a requirements contract is the promise by the buyer to purchase the subject goods exclusively from the requirements supplier.

6. A contract which provides for a guarantee of the minimum quantity of an item that the buyer will purchase is not a requirements contract since it is not uncertain as to amount.

7. A requirements contract cannot exist in the absence of a contractual provision connecting the amount of goods to be purchased under the agreement to the needs of the buyer.

6

8.     The Business Agreement is not a requirements contract because the number of trykes to be purchased and sold is not determined by the requirements of the Defendants.

9.     The Business Agreement is not a requirements contract because Defendants are not required to purchase trykes solely from Plaintiff.

10.     In order for a joint venture to exist there must be a community of interest in the performance of a common purpose, a joint proprietary interest in the subject mater, a mutual right to control, a right to share in the profits, and a duty to share in any losses which may be sustained.

11.     The Business Agreement did not establish a joint venture because it clearly refutes the notion that the parties agreed to share in profits and losses.

12.     The Business Agreement did not establish a joint venture because the parties did not have a mutual right to control each other's policies and conduct.

13.     The Business Agreement did not establish a joint venture because it describes two separate and independent entities each with its own defined area of interest.

14.     Since the Business Agreement did not establish a joint venture, Defendants do not owe Plaintiff a fiduciary duty and therefore did not breach a fiduciary duty to Plaintiff.

15.     The non-existence of a joint venture prevented Defendants from having a duty to disclose material information to the joint venture. Defendants consequently did not commit constructive fraud.

16.     Cancellation of a contract occurs when either party puts an end to the contract for breach by the other.

17. Following cancellation, all obligations which are still executory on both sides are discharged, but the cancelling party retains any remedy for breach of the whole contract or any unperformed balance.

18. John Parrott cancelled the Business Agreement in December of 1997 or January of 1998 due to breach of the Agreement by Plaintiff.

19. Upon cancellation of the Business Agreement in December of 1997 or January of 1998, all obligations of the parties related to the manufacture, purchase, and sale of any trykes other than the four completed in August or September of 1997, were executory and were consequently discharged.

20. A contract that provides for successive performances but is indefinite in duration is valid for a reasonable time, but unless otherwise agreed may be terminated at any time by either party.

21. Upon termination of a contract, all executory obligations of both parties are discharged.

22. Termination by one party requires reasonable notice to the other party.

23. Under the Uniform Commercial Code, what is a reasonable time for taking any action depends on the nature, purpose and circumstances of such action.

24. Damages for failure to provide the other party with reasonable notice of termination are limited to those incurred during the time span that would have been a reasonable notification period.

25. The Business Agreement provided for successive performances but did not include a specific period of duration. The Business Agreement was consequently terminable at will by either party.

26. As an alternative to cancellation of the Business Agreement by John Parrott, John Parrott and John Harrison mutually agreed to terminate the Business Agreement in December of 1997 or January of 1998.

27. As an alternative to mutual termination, John Harrison terminated the Business Agreement in December of 1997 or January of 1998.

28. In the alternative, John Parrott terminated the Business Agreement in December of 1997 or January of 1998.

29. The notice of termination given by John Parrott was reasonable under the circumstances given that Plaintiff had not manufactured additional trykes and had been unable to fulfill its obligations under the Business Agreement and subsequent Purchase Contract.

30. Upon termination of the Business Agreement in December of 1997 or January of 1998, all obligations of the parties related to the manufacture, purchase, and sale of any trykes other than the four completed in August or September of 1997 were executory and were accordingly discharged.

31. Since Defendants retained no obligation to purchase trykes following termination or cancellation of the Business Agreement, Defendants did not breach the Business Agreement.

32. Due to the cancellation or termination of the Agreement, Defendants did not breach a fiduciary duty to Plaintiff by discontinuing performance of the Business Agreement.

33. Every action must be prosecuted in the name of the real party in interest.

34. In New Mexico, a real party in interest is one who owns the right being enforced or who is in a position to discharge the defendant from liability.

35. One of the methods by which a corporation acquires the assets of another corporation is by exchange of assets for notes.

36. The transfer of all assets without reservation resulted in the transfer of any causes of action which the Plaintiff corporation possessed.

37. Plaintiff does not own the intellectual property, including the trademark, which is the basis of its claim for Unfair Competition, is the proper party in interest and cannot maintain that claim and is not entitled to injunctive relief based on the alleged use of the intellectual property by Defendants.

38. Plaintiff does not own any of the causes of action which it may have owned prior to the transfer of assets to Margie Stuchly and therefore is not the proper party in interest and cannot maintain any claims arising from the Business Agreement.

39. Plaintiff breached the 1999 Agreement for the purchase and sale of five trykes by accepting payment for those trykes and not delivery them.

Respectfully Submitted,

SHEEHAN, SHEEHAN & STELZNER, P.A.
Attorneys for Defendants
707 Broadway N.E., Suite 300
Post Office Box 271
Albuquerque, New Mexico 87103
(505) 247-0411

BY: _____
JUAN L. FLORES

10

I HEREBY CERTIFY that a true and
correct copy of the foregoing was
mailed to the following counsel of record:

Christal K. Grisham, Esq.
Post Office Box 21581
Albuquerque, New Mexico 87154-1581

Jody Neal-Post, Esq.
317 Amherst S.E.
Albuquerque, New Mexico 87106

this 5th day of July, 2002.

JUAN L. FLORES

A:\Defendants' Proposed Findings Conclusions.wpd